IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed-Pass-Through Certificates, Series 2006-M1, | ) ) ) ) ) ) | Civil No. 18-21 |
| Appellant, | ) ) | (Bankruptcy Nos. 15-10895) |
| v. | ) ) | |
| Denae Marie Randolph and Ronda J. Winnecour, Chapter 13 Standing Trustee, | ) ) ) | |
| Appellees. | ) ) ) | |

| | | |
|---|---|---|
| Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed-Pass-Through Certificates, Series 2006-M1, | ) ) ) ) ) ) | Civil No. 18-22 |
| Appellant, | ) ) | (Bankruptcy No. 15-10886) |
| Clyde W. Ransom, Betty Jean Ransom, and Ronda J. Winnecour, Chapter 13 Standing Trustee, | ) ) ) ) | |
| Appellees. | ) ) ) | |

MEMORANDUM OPINION

Conti, Chief District Judge

1

## I. Background

These bankruptcy appeals address a series of parallel orders issued by the bankruptcy court in two underlying bankruptcy cases: In re Denae Marie Randolph, No. 15-10895 (Bankr. W.D. Pa. 2015); and In re Clyde W. Ransom, *et al*., 15-10866 (Bankr. W.D. Pa. 2015). At some point prior to July 2017, the bankruptcy court observed that Ocwen Loan Servicing, LLC ("Ocwen"), a mortgage servicing company, had improperly charged a $400 legal fee for "plan review" in both cases. Further inquiry revealed that Ocwen may have charged this improper fee in at least 30 other bankruptcy cases. Ocwen conceded that the fees should not have been charged and agreed to remove them from the loans. In order to verify that this had been done, the bankruptcy court issued an order directing Ocwen to produce the complete loan histories for all those cases to the Chapter 13 Trustee for review. This order was entered onto the docket of both cases on July 26, 2017.

Shortly thereafter, Ronda J. Winnecour, the trustee in both cases (the "Trustee", and collectively with the debtors in each case, the "Appellees"), reported to the bankruptcy court that Ocwen had only provided partial loan histories, rather than the complete loan histories required by the court's orders. The bankruptcy court issued a second order on each docket on August 15, 2017, directing Ocwen to respond to the Trustee's report and scheduling a hearing on the matter for August 31, 2017.

At the hearing, the bankruptcy court confirmed that Ocwen had provided only partial loan histories to the Trustee. The bankruptcy court issued another order on each docket directing Ocwen to supply complete loan histories and raising the possibility of sanctions for non-compliance. Those orders were entered onto the docket in each case on September 1, 2017.

On December 1, 2017, the Trustee reported that Ocwen had still not complied. The bankruptcy court issued an order in each case on December 21, 2017, directing Ocwen and its counsel to appear at a hearing to "show cause for and justify their failure to comply" with the three previous orders. That hearing was scheduled for January 30, 2018, but was postponed when Ocwen filed the instant Notices of Appeal on January 4, 2018.

*II. Standard*

Pursuant to 28 U.S.C. § 158(a)(1), a party may bring an appeal as of right from "final judgments, orders, and decrees" issued by a bankruptcy court. An order is final and appealable for purposes of 28 U.S.C. § 158(a)(1) if the order "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." In re Truong, 513 F.3d 91, 94 (3d Cir. 2008).[1]

District courts also have discretion to hear appeals from "interlocutory orders and decrees" from a bankruptcy court. Those appeals are governed by 28 U.S.C. § 158(a)(3). Pursuant to § 158(a)(3), review is appropriate only where the appellant "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." United States v. Dershaw (In re Rosen), 560 B.R. 415, 421 (E.D. Pa. 2016) (quoting In re Del. & Hudson Ry. Co., 96 B.R. 469, 472-73 (D. Del. 1989)). While there are no clear statutory standards governing the § 158(a)(3) analysis, courts within the

---

[1] As an aside, there are actually two standards of finality in bankruptcy cases. In re Armstrong World Industries, Inc., 432 F.3d 507, 511 (3d Cir. 2005). Where an appeal implicates issues that are unique to the bankruptcy context, a relaxed standard of finality applies. Id. On the other hand, "orders that do not adjudicate specific adversary proceedings or require further factual development are governed by ordinary concepts" of finality. In re Truong, 513 F.3d at 94. Because the orders at issue here relate to a discovery matter, rather than to specific adversary bankruptcy issues, it appears that the ordinary standard for finality applies. The parties do not address this issue.

Third Circuit have typically used the factors set forth in 28 U.S.C. § 1292(b) to determine whether to invoke discretionary jurisdiction. Id. (citing Bertoli v. D'Avella (In re Bertoli), 812 F.2d 136, 139 (3d Cir. 1987)). Those factors are whether: (1) a controlling question of law is involved; (2) there are substantial grounds for a difference of opinion about the question of law; and (3) an immediate appeal would materially advance the termination of the litigation. Id. All three factors, as well as the existence of "exceptional circumstances," must be demonstrated before a court may certify an order for interlocutory appeal. Id. (citing Finkel v. Polichuk, No. 10-219, 2011 WL 2274176, at *3 (E.D. Pa. June 8, 2011)).

## III. Discussion

As an initial matter, Bankruptcy Rule 8002(a) requires a notice of appeal to be filed within fourteen days after entry of the judgment, order, or decree being appealed. The appeals in Randolph and Ransom were each filed on January 4, 2018. Consequently, of the four orders issued by the bankruptcy court in each case, only the last orders – the orders to show cause issued on December 21, 2017 – were appealed in a timely manner. The parties agree that the December 21, 2017 orders form the exclusive basis for these appeals.

### A. Appeal as of right pursuant to § 158(a)(1)

#### 1. Appellant's Argument

Ocwen contends that it is entitled to an appeal as of right for two reasons. First, with respect to the Randolph case, Ocwen argues that the bankruptcy court had no jurisdiction to issue the December 21, 2017 order to show cause because the underlying bankruptcy case had already been closed on August 8, 2017. As noted by Ocwen, once a case is dismissed and the debtor's estate is closed, the bankruptcy court's jurisdiction dissolves because "disputes arising post-

closure of the underlying case . . . cannot have an effect on the administration of the estate." Iannini v. Winnecour, 487 B.R. 434, 438 (W.D. Pa. 2012). Ocwen suggests, albeit without citation, that because the bankruptcy court lacked jurisdiction to enter the December 21, 2017 order, that order is immediately appealable.

As a second basis for immediate appeal, Ocwen contends that the bankruptcy court has no jurisdiction to conduct what amounts to an unlawful and covert "civil and/or criminal investigation" into the nature of the $400 fee charged by Ocwen in Randolph, Ransom, and almost 30 other cases. Ocwen notes that it voluntarily withdrew that fee from its Notice of Post-Petition Mortgage Fees, Expenses, and Charges and, therefore, the issue was no longer before the bankruptcy court. Ocwen suggests that the bankruptcy court's investigation violates 18 U.S.C. § 3057(a), which requires any judge with reasonable grounds to believe that a violation of the bankruptcy laws has occurred to report the violation to the appropriate United States attorney. Ocwen implies that it is entitled to an immediate appeal simply because the bankruptcy court allegedly lacked jurisdiction.

### 2. Appellees/Trustee Arguments

Appellees in each case respond that, whether or not the bankruptcy court had jurisdiction to enter the December 21, 2017 orders, those orders are not appealable as of right because they are not final orders for purposes of § 158(a)(1). A decision is considered final and appealable if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In re Truong, 513 F.3d at 94. Appellees note that the December 21, 2017 orders do not resolve any issues on their merits, affix liability to any party, or impose any sanctions. Instead, the orders simply schedule a hearing and direct Ocwen to show cause as to why it did

5

not comply with the court's previous orders. Appellees cite a number of decisions for the proposition that orders related to liability and sanctions are not considered final and appealable until "the court fixes the amount of the sanctions," an event which has not yet occurred (and that may never occur depending on the outcome of the hearing). Kozlowski v. Scura, 139 F. App'x 420 (3d Cir. 2005); In re Jeannette Corp., 832 F.2d 43, 46 (3d Cir. 1987); see 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FED PRAC. & PROC JURIS. § 3917 (2d ed. 1992) ("A determination that contempt has occurred is not final if the questions of sanctions is postponed.").

With respect to Ocwen's argument that the December 21, 2017 orders are *per se* appealable because the bankruptcy court exceeded its jurisdiction, Appellees note that Ocwen did not cite any caselaw to support this proposition. Appellees suggest that it appears to be "well-settled" that a court's decision to exercise jurisdiction does not automatically make that decision final for appellate purposes. By way of example, Appellees point out that an order denying a motion to dismiss for lack of jurisdiction is not considered a final order. See, e.g., Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 347 (3d Cir. 1997) ("The denial of a motion to dismiss for lack of subject matter jurisdiction is not appealable."); Patrick v. Dell Fin. Servs., 366 B.R. 378, 384-85 (M.D. Pa. 2007) (noting that orders denying a motion to dismiss on the basis of jurisdiction are generally regarded as non-final orders).

### 3. Analysis

Ocwen failed to demonstrate that the December 21, 2017 orders to show cause are final orders. As noted above, the only effect of the bankruptcy court's orders is to schedule a show-cause hearing and instruct various officers and counsel for Ocwen to appear in person and

6

explain the basis for their refusal to comply with the bankruptcy court's evidentiary requests. An order scheduling a show-cause hearing does not "end the litigation on the merits" or otherwise satisfy the requirements for finality under § 158(a)(1). This conclusion is particularly true where the bankruptcy court has not yet made any decision with respect to sanctions. In re Truong, 513 F.3d at 94; Kozlowski, 139 F. App'x at 420 ("An order imposing sanctions does not become appealable until the court fixes the amount of the sanctions.").

Ocwen's suggestion that Iannini compels a different result is unavailing. In Iannini, a dispute arose concerning an application for attorney's fees that was filed after the underlying bankruptcy case had been dismissed. Iannini, 487 B.R. at 438-39. The bankruptcy court granted the request for attorney's fees over the Trustee's jurisdictional challenge. On appeal, the district court noted that a "dispute[] arising post-closure of the underlying case, including applications for counsel fees, cannot have an effect on the administration of the [bankruptcy] estate." Id. at 438. Because a bankruptcy court's jurisdiction is generally confined to disputes relating to the administration of the bankruptcy estate, the court concluded that "a bankruptcy court, in the normal course, has no jurisdiction to hear such post-dismissal disputes." Id. at 439.

Ocwen suggests that the same result is warranted (at least with respect to Randolph) because the debtor's case was closed at the time that the bankruptcy court entered the December 21, 2017 order. Unlike in Iannini, however, the bankruptcy court in Randolph issued its *first* order relating to the instant dispute – the July 26, 2017 order compelling Ocwen to turn over complete loan histories to the Trustee - at a time when the Randolph case was still open. Each of the three subsequent orders, including the December 21, 2017 show cause order, is an attempt by the bankruptcy court to enforce the original July 26, 2017 order. In Iannini, the court acknowledged that actions taken by the court to enforce its own prior orders fall squarely within

7

the court's ancillary jurisdiction, even post-dismissal. Id. at 441 (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379-80) ("[F]ederal courts may exercise ancillary jurisdiction . . . to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and *effectuate its decrees*.") (emphasis added). Other courts have reached the same conclusion. See, e.g., Poplar Run Five Ltd. P'Ship v. Virginia Elec. & Power Co. (In re Polar Run Five Ltd. P'ship), 192 B.R. 848, 859 (Bankr. E.D. Va. 1995) ("A court does, however, have jurisdiction to enforce its own orders under the doctrine of ancillary jurisdiction."); Post v. Ewing, 119 B.R. 566, 568 (S.D. Ohio 1999) (affirming a bankruptcy court's exercise of jurisdiction beyond the dismissal of the bankruptcy case where the debtor's attorney ignored the court's previous instructions). Based upon the foregoing, the court concludes that Iannini supports, rather than undercuts, the bankruptcy court's exercise of jurisdiction in Randolph.

Even if Ocwen were correct in arguing that the bankruptcy court lacked jurisdiction to enter the December 21, 2017 orders,[2] Ocwen still fails to explain how this alleged lack of jurisdiction has any bearing on the finality requirement set forth in § 158(a)(1). Ocwen appears to suggest that any order issued in the face of a jurisdictional challenge is *per se* final and appealable, regardless of the nature of the order itself. Ocwen, however, cites no caselaw to support this proposition. To the contrary, it appears well settled that "immediate appeal is *not* automatically authorized whenever a party alleges that a . . . court order has permitted a suit to move forward in the absence of proper subject matter jurisdiction." Ashmore v. CGI Group, Inc., 860 F.3d 80, 85 (2d Cir. 2017) (emphasis added). Indeed, appellate courts routinely refuse

---

[2] Ocwen during the hearing raised for the first time the argument that there is no jurisdiction because there is no case or controversy. See International Finance Corp. v. Kaiser Group International Inc. (In re Kaiser Group Int'l Inc.), 399 F.3d 558 (3d Cir. 2005). That issue was not raised in the bankruptcy court or the briefings and does not bear on the finality of the orders at issue. Ocwen may raise this issue with the bankruptcy court on remand.

8

to grant immediate review of lower court orders issued in the face of jurisdictional challenges. See, e.g., Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 500 (1989) (declining to hear an interlocutory appeal where the defendant was claiming the suit was not properly before the particular court because that court lacked jurisdiction); Harrison, 111 F.3d at 347 ("The denial of a motion to dismiss for lack of subject matter jurisdiction is not appealable."); In re Balice, 644 F. App'x 112, 113 (3d Cir. 2016) (denying petition for mandamus based on the underlying district court's alleged lack of jurisdiction because the petitioner "may obtain that review on direct appeal once his case is finally resolved").

For each of these reasons, Ocwen's request for an appeal as of right pursuant to Section 158(a)(1) is denied.

### B. Discretionary appeal pursuant to § 158(a)(3)

#### 1. Appellant's Argument

Ocwen next contends that, even if the December 21, 2017 orders are deemed to be interlocutory, the court should exercise its discretion to grant leave of appeal under § 158(a)(3). During the parties' briefing of this issue, Ocwen restricted its analysis to a single paragraph and failed to cite any supporting caselaw. At oral argument, Ocwen asserted, for the first time, that the district court's decision to grant interlocutory review in Patrick is directly on point.

In Patrick, the issue before the district court was whether to grant an interlocutory appeal from a bankruptcy court order addressing defendant's motion to dismiss for lack of subject-matter jurisdiction. Patrick, 366 B.R. at 383. The defendants in Patrick had argued in their motion that the bankruptcy court lacked subject-matter jurisdiction over the debtor's attempt to bring claims on behalf of a nationwide class. Id. at 382. The bankruptcy court denied the

9

motion, concluding that "bankruptcy courts have jurisdiction over nationwide class actions." Id. at 383. The defendants promptly sought interlocutory review of that decision.

On appeal, the district court concluded that each of the § 1292(b) factors favored interlocutory review. The court noted that an appeal from an order denying a motion to dismiss for lack of subject-matter jurisdiction "usually involves a controlling question of law" because it speaks directly to the bankruptcy court's power to adjudicate a particular claim. Id. at 386. The court also observed that there was significant uncertainty in the caselaw, both within and outside of the Third Circuit, as to what standard applies when determining whether a bankruptcy court may exercise subject-matter jurisdiction over a national class action. Id. Finally, the court concluded that interlocutory review would materially advance the ultimate termination of the litigation because "there is a grave risk that the parties will expend significant time and resources litigating a nationwide class action over which the Bankruptcy Court did not have jurisdiction to hear in the first instance." Id. at 387.

Relying on Patrick and International Finance Corp. v. Kaiser Group International Inc. (In re Kaiser Group Int'l Inc.), 399 F.3d 558 (3d Cir. 2005), Ocwen maintains that a controlling question of law is involved because the bankruptcy court lacked jurisdiction to issue the orders and is attempting to "engage in an investigation, which may or may not have Constitutional implications for the targets of the investigation, who are entitled to certain protections." (1:18-cv-21, ECF No. 8, at 6.) Ocwen contends that granting the appeal would materially advance the termination of the bankruptcy court proceedings because "[a] finding that the Order to show Cause was inappropriate would resolve the issue pending in the Bankruptcy Court." Id.

2. **Appellees/Trustee Arguments**

Although Appellees in each case argue that each of the three factors weighs against granting a discretionary appeal, they primarily focus on the second and third factors and the "exceptional circumstances" requirement. With respect to the second factor, Appellees argue that there is no substantial ground for a difference of opinion in this instance because it is well settled that a bankruptcy court has inherent power to impose sanctions, both before and after the dismissal of the underlying debtor's case. See, e.g., Iannini, 487 B.R. at 441-42 (noting that a bankruptcy court's jurisdiction extends beyond dismissal of the debtor's case where the court is seeking to enforce its own orders and "effectuate previous decrees"). Appellees also argue that the requested appeals would not advance the ultimate termination of the litigation because these appeals represent only two of the thirty-plus cases affected by Ocwen's alleged malfeasance and because the bankruptcy court is in the best position to hold a hearing to evaluate Ocwen's compliance with its own prior orders. Finally, Appellees contend that, even if all three factors are satisfied, Ocwen still failed to demonstrate that "exceptional circumstances" warrant a deviation from the general policy of deferring review until entry of a final judgment. In re Phila. Newspapers, LLC, 418 B.R. 548, 557 (E.D. Pa. 2009).

### 3. **Analysis**

As noted above, the factors to be considered in making this determination are: (1) whether a controlling question of law is involved; (2) whether there are substantial grounds for a difference of opinion as to the question of law; and (3) whether an immediate appeal would materially advance the termination of the litigation. In re Rosen, 560 B.R. at 421. Ocwen must also demonstrate that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." Id.

### a. Controlling Question of Law

An order involves a controlling question of law "if, on appeal, a determination that the decision contained error would lead to reversal." In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004). "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally." Bradburn Parent Teacher Store, Inc. v. 3M, No. 02–7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005) (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974)).

In Patrick, the district court recognized that "[a]n appeal from an order denying a motion to dismiss for lack of subject matter jurisdiction usually involves a controlling issue of law." Patrick, 366 B.R. at 386 (citing N. Fork Bank v. Abelson, 207 B.R. 382, 390 (E.D. N.Y. 1997)). The court observed that the bankruptcy court's decision to assert jurisdiction over a nationwide class action "speaks directly to its power to adjudicate a particular claim." Id. at 386. In contrast, the orders at issue in these cases merely schedule a show-cause hearing to address the bankruptcy court's concerns over Ocwen's compliance with prior orders. No final decision has been made by the bankruptcy court about whether a sanction is appropriate or, for that matter, whether the court even has the authority to entertain such a sanction. While the hearing is a preliminary step towards a finding that might ultimately present a controlling question of law, it does not, in and of itself, present such a question. See PAH Litigation Trust v. Water St. Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.), No. 16-201, 2017 WL 6524524, at *12 (D. Del. Dec. 21, 2017) (noting that a controlling question of law is not presented where the issues identified in the appeal are subject to further development). Under these circumstances, the court concludes that Ocwen failed to identify a controlling issue of law.

### b. Substantial Ground for Difference of Opinion

Ocwen must next demonstrate the existence of substantial grounds for a difference of opinion regarding the controlling issue. A party cannot establish a substantial ground for difference of opinion "simply by expressing its dissatisfaction with the Bankruptcy Court's decision," Patrick, 366 B.R. at 386; rather, "a substantial ground for difference of opinion 'must arise out of genuine doubt as to the correct legal standard.'" In re Powell, No. 06–4085, 2006 WL 3208843, at *2 (E.D. Pa. Nov.3, 2006) (quoting P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp.2d 355, 360 (D.N.J. 2001)).

For purposes of this appeal, the court will assume *arguendo* that a substantial ground for difference of opinion exists. As previously discussed, the Trustee cites a number of decisions reflecting the general proposition that courts have "ancillary jurisdiction post-dismissal to interpret and effectuate previous decrees." Iannini, 487 B.R. at 441; Kokkon, 511 U.S. at 379-80 (noting that a court has post-dismissal authority to "manager its proceedings, vindicate its authority, and effectuate its decrees."). In response, Ocwen argues that the bankruptcy court had no authority to inquire further into the underlying fee issue because the fee had been withdrawn from the bankruptcy estate, depriving the court of a live case or controversy. See New Jersey v. Heldor Indus., Inc., 989 F.2d 702, 707 (3d Cir. 1993) (holding that a bankruptcy court has no authority to render a decision on an issue that has been mooted by the withdrawal of an objection). While the bankruptcy court's authority to pursue its investigation into the improper fees is admittedly uncertain,[3] the court need not resolve that issue at this time because each of the remaining § 1292(b) factors weighs against discretionary review.

---

[3] This issue will be subject to review by the bankruptcy court.

### c. Materially Advance the Ultimate Termination of the Litigation

An interlocutory appeal must also materially advance the ultimate termination of the litigation. In addressing this factor, courts consider whether: (1) the need for trial would be eliminated; (2) the trial would be simplified by the elimination of complex issues; and (3) discovery could be conducted more expeditiously and at less expense to the parties. Patrick, 366 B.R. at 387 (citing Interwave Tech., Inc. v. Rockwell Automation, Inc., No. 05–0398, 2006 WL 401843, at *6 (E.D. Pa. Feb.16, 2006)).

In Patrick, the court granted leave to appeal because the litigation was "at an early stage" and resolution of the jurisdictional issue "would resolve a large portion of the litigation without wasting the scarce resources of the Bankruptcy Court and the parties." Id. The court also observed that discovery would be simplified by resolving the class action claim at an early juncture. Id.

Unlike in Patrick, interlocutory appeals in the instant cases would not materially advance the termination of the litigation. There is no evidence or allegation that the December 21, 2017 orders impose expensive discovery obligations on the parties or resolve substantive issues regarding the need for a trial. The orders simply direct Ocwen to show cause as to whether it has fully complied with several prior orders related to evidentiary production. In re Rosen, 560 B.R. at 421 (noting that a bankruptcy court order "deal[ing] merely with the production of a detailed privileged log" does not materially advance the termination of litigation). The issues in these appeals may be mooted if the bankruptcy court determines that Ocwen has complied with its previous orders or that it has no jurisdiction to inquire further. See Segal v. Holber, No. 13-2793, 2014 WL 1123276, at *7-8 (E.D. Pa. Mar. 20, 2014) (holding that immediate appeal from

14

an order would not materially advance the ultimate termination of the litigation because "the issues presented in [the] appeal could be mooted by a later decision of the bankruptcy court"). This concern is particularly compelling because Ocwen concedes that the jurisdictional challenge raised in these appeals was never squarely presented to the bankruptcy court.[4]

### d. **Exceptional Circumstances**

Finally, even if all three § 1292(b) factors were met, Ocwen must also demonstrate that "exceptional circumstances" justify the need for immediate interlocutory review.[5] See United Tax Group, LLC v. Welke, No. 16-1323, 2018 WL 385185, at *2 (D. Del. Jan. 11, 2018) ("Assuming *arguendo* that his appeal satisfies the Section 1292(b) criteria, Welke has not presented any exceptional circumstances warranting the need for immediate review of the bankruptcy court's order granting leave to amend."). No such circumstances exist in this case. The December 21, 2017 orders do not resolve substantive issues on their merits or impose liability or sanctions. Courts have routinely declined to exercise jurisdiction over interlocutory appeals of such ancillary orders. See, e.g., In re Rosen, 560 B.R. at 421 (dismissing an appeal of the bankruptcy court's order compelling compliance with a subpoena after declining to exercise discretionary jurisdiction under § 158(a)(3)); Segal, 2014 WL 1123276, at *7-8 (declining to exercise jurisdiction over appeal from the bankruptcy court's order appointing a particular law firm as special litigation counsel to the Trustee); Welke, 2018 WL 385185, at *2 (declining to exercise jurisdiction over bankruptcy court's order granting the trustee an opportunity to amend his complaint). The court reaches the same conclusion here.

---

[4] Indeed, Ocwen appears to have willingly complied, at least partially, with several of the bankruptcy court's post-dismissal orders without raising any jurisdictional concerns.
[5] Ocwen did not address this requirement in its briefs or at oral argument.

### e. **Summary**

For each of the foregoing reasons, the court will deny Ocwen's request for immediate interlocutory appeals of the December 21, 2017 orders. The hearing scheduled by the bankruptcy court will provide Ocwen with an opportunity to raise the precise jurisdictional arguments that it raises in these appeals. Due to the bankruptcy court's intimate familiarity with the proceedings, that court is clearly in the best position to evaluate these arguments and make a final determination. See Welke, 2018 WL 385185, at *2 ("The bankruptcy court is in the best position to resolve the issues presented by the parties in the context of these [interlocutory] motions."). Should the bankruptcy court reject Ocwen's position and impose a final sanction, Ocwen will have an opportunity to appeal those final orders at that time.

### *IV. Conclusion*

For the reasons discussed above, Ocwen's requests to appeal the December 21, 2017 orders of the bankruptcy court are denied. The motion to dismiss filed by the Appellees in each case is granted. An appropriate order follows.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: March 2, 2018